UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ALLEN HINSHAW, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14CV00024 ACL |
| | ) | |
| SHERIFF KEITH MOORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Allen Hinshaw has filed this action against three law enforcement defendants alleging that they violated his constitutional rights when he was arrested without probable cause on his own real property and incarcerated. Plaintiff asserts claims under 42 U.S.C. § 1983, and a state law claim. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. *See* 28 U.S.C. § 636(c). Presently pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 18.)

**I.      Background**

In Count I of his Amended Complaint, Plaintiff alleges that Defendants Sheriff Keith Moore, Deputy Sheriff Michael Borders, and Deputy Gerald Douglas entered into a conspiracy to arrest Plaintiff for the manner in which Plaintiff parked his tractor on his own real property without probable cause in violation of his Fourth and Fifth Amendment rights. In Count II of the Amended Complaint, Plaintiff contends that Defendant Borders violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures by arresting Plaintiff

without probable cause.  In Count III, Plaintiff alleges that Defendant Douglas conducted a strip search and body cavity search at the Mississippi County Jail in violation of Missouri law.

In their Motion for Summary Judgment, Defendants argue that they are entitled to qualified immunity because their actions did not violate clearly established constitutional law and they had probable cause to believe Plaintiff committed the offenses of false imprisonment and disturbing the peace.  Defendants contend that the strip search of Plaintiff while he was being booked into the Mississippi County Jail did not violate federal or state law.

## II.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004).  "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910–11 (8th Cir. 2005) (internal quotations omitted).  A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324.  "If 'opposing parties tell two different stories,' the court must

2

review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**III.   Facts**

The incident that is the subject of Plaintiff's claims stems from a property dispute. The following facts are undisputed:[1]

Plaintiff Allen Hinshaw owns real estate (hereinafter "the Property") in Mississippi County, Missouri, in Section 5 to the east of the Dorena Hunt Club. *See* Township Plat, Def's

---

[1] The undisputed facts are taken from facts that (1) Plaintiff admitted were undisputed in his response or (2) Plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

Ex. A. The Property, consisting of approximately 50 acres, was inherited in 1965 and is owned jointly with Hinshaw's brother. The northern edge of the Property is bounded by a levee and further north of the levee is Bryant Farms. The southern edge of the property is bounded by the Mississippi River at the southeast corner, and by property commonly known as the Riley Estate along the remainder of the southern side and much of the western and eastern sides of the property. Bryant Farms also borders the Property on the upper portion of the eastern and western boundaries. West of the Riley estate is the Tomera property, further West of the Tomera property is the Dorena Hunt Club.

There is a pathway from County Road 509 through Hinshaw's property to the Riley estate ("Pathway").[2] The Pathway has been in existence since at least 1965. The Pathway was an old turn row, which would allow access to a field. The Pathway came off the old Dorena Ferry Road, which is east of the Riley property and runs north and south. The Pathway runs east and west across the lower part of Section 5 in Mississippi County. Sometime in the early-to-mid 1990s, E.J. Marks or Mike Bryant erected a locked gate where the old Dorena Ferry Road crosses the levee. Nevertheless, prior to October 2012, the Pathway was used by many people to go from the Dorena Ferry Road to the Riley property. For at least twenty years, various third parties used the Pathway to get to the Dorena Hunt Club. People who have farmed and frequented the Dorena Hunt Club had permission to use the Pathway to cross Hinshaw's property. Alvin Marcum and E.J. Marks, who farm the Tomera farm ground, had permission to use the turn row. There was no written agreement concerning the use of the Pathway by any of the relevant landowners.

---

[2] Plaintiff objects to Defendants' characterization of this pathway as a "road," "access road," or "right of way." The legal character of this pathway is disputed. As such, the Court will refer to this path as either the "Pathway" or "turn row."

During the first and second weeks of August 2012, Hinshaw put up a fence on the east part of the turn row to stop people from using it. The fences had been torn down. Hinshaw told Marcum to stop using the turn row and Marcum told Hinshaw that he did not see how Hinshaw could stop Marcum from crossing the property.

Roy Russell, a family friend of Marks and Marcum, had hunted on the Tomera property with the permission of Marcum off and on since the mid-1980s. Russell joined Marks and Marcum when they started the Dorena Hunt Club. The Dorena Hunt Club charges individuals $250 per year to hunt at the Tomera property. Sheriff Moore is allowed to hunt at no cost. Moore used the Pathway to access the hunting club continuously since the early 1990s. Russell had used the Pathway to access the Tomera property since 1965, when he worked for Bryant driving a tractor. Keith Arnold is the son-in-law of Roy Russell. He has hunted the Tomera property for sixteen years with the permission of Marcum, and has used the Pathway to access the property.

On October 20, 2012, Russell, Arnold, and Arnold's fifteen-year-old daughter Dakota went bow hunting on the Tomera property, and went out to hunt at approximately 5:30 a.m. When the group went across the Pathway, there was nothing blocking it. Russell and Arnold knew Hinshaw had revoked permission to use the Pathway at least two weeks prior, when they had an encounter with Hinshaw at a restaurant.

On October 20, 2012, Hinshaw and his employee, Steven Carter, went to Hinshaw's property to clean up limbs. Hinshaw saw tracks across his property and, as a result, he put up barbed wire and posts across the western Pathway along with his tractor across the Pathway with wire on it, and hooked the wire to a tree.

That same day, Russell and the Arnolds finished hunting and were returning at approximately 8:00-8:30 a.m. When they arrived at the Pathway on the Hinshaw property, Hinshaw had a tractor parked across the Pathway and barbed wire running over to a tree and from the front of the tractor to a post. Russell asked Hinshaw if Hinshaw was going to let them pass. Hinshaw responded that they would be trespassing, and told them to go around a tree to their right. Russell declined, stating that he would then be on Hinshaw's property and was not going to trespass. Arnold asked Hinshaw to move his tractor, and Hinshaw did not comply, responding that they would be trespassing. After Hinshaw refused to allow the group passage across the Pathway, Russell called Defendant Sheriff Moore and talked to him about the situation. Moore told Russell to tell Hinshaw to move the tractor or he would be arrested. In response, Hinshaw shrugged his shoulders and said "so."

Moore heard Hinshaw tell Russell he was not going to move the tractor. Moore then contacted Defendant Borders, a deputy sheriff with the Mississippi County Sheriff's Department for over fourteen years, and directed him to go down to the area and see if he could get Hinshaw to move his tractor. Borders contacted Darren Cann, the Prosecuting Attorney of Mississippi County, to inform him of the situation and ask for advice. Cann advised Borders that Plaintiff could be charged with false imprisonment and peace disturbance if Hinshaw would not move the tractor. After talking to Cann, Borders contacted Deputy David Watkins of the Mississippi County Sheriff's Department and told him to meet him at the East Prairie Police Department to go with Borders to the Dorena Hunt Club area.

When Borders arrived at the scene, he went down the Pathway and saw Hinshaw and Carter and a tractor with barbed wire stretched across the Pathway; as well as Russell, Arnold, and Arnold's daughter on the other side of the tractor and the barbed wire. Borders asked

6

Hinshaw what was going on and Hinshaw stated that he had blocked the Pathway because Russell and the Arnolds were trespassing. Borders asked Hinshaw to move the tractor but Hinshaw said "no." Hinshaw told Borders and Watkins that anyone crossing his property is trespassing. Borders then told Hinshaw that if he did not move the tractor he would be under arrest. Hinshaw did not move the tractor and was arrested. Borders also asked Carter to move the tractor and Hinshaw told Carter to stay off of the tractor and not to move it. Carter refused to move the tractor and he was also arrested. Borders then removed the barbed wire fencing and let the Arnolds and Russell pass.

Borders and Watkins transported Hinshaw and Carter to the Mississippi County Sheriff's Department. Hinshaw and Carter were taken into the booking area to be processed for a 24 hour hold pending charges. Gerald Douglas, a correction's officer, booked Hinshaw and Carter into the Mississippi County Jail. After Hinshaw was booked, he was searched by the jailer and required to remove his clothing at which time he was directed to lift his genitals, bend over, and spread his cheeks.

After delivering Hinshaw and Carter to the jail, Borders prepared a Probable Cause Affidavit and, based on his previous discussion with the prosecutor Borders, requested charges for false imprisonment and peace disturbance. The Probable Cause Affidavit was presented to the prosecutor after Russell and the Arnolds prepared their statements. Hinshaw and Carter were released and summonsed to court. The charges were ultimately dismissed by the prosecutor.

**IV.    Discussion**

Defendants argue that they are qualifiedly immune from any liability as their actions were reasonable in light of circumstances presented to them, that there was no clearly established violations of any constitutional rights, and that Michael Borders had probable cause to arrest

7

Plaintiff based in part on his discussions with the county prosecutor prior to the arrest of Plaintiff, his investigation at the scene, and complaints of the victims. Defendants also contend that Officer Douglas did not violate the Constitution or Missouri law by strip searching Hinshaw. The undersigned will discuss these claims in turn.

**A.     Plaintiff's Arrest (Counts I and II)**

Section 1983 provides a cause of action for a person who is injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law." 42 U.S.C. § 1983. Defendants contend that Plaintiff's claims are barred by qualified immunity.

"Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity permits "'officers to make reasonable errors,' *Habiger v. City of Fargo et al.*, 80 F.3d 289, 295 (8th Cir. 1996), and provides 'ample room for mistaken judgments.' *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011). In addition, "[t]he defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). The courts

8

have discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (citations omitted).

The Fourth Amendment clearly establishes the right of citizens not to be arrested without probable cause. *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999). However, "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman*, 646 F.3d at 522-23 (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)).

Here, Borders had at least arguable probable cause to arrest Plaintiff without a warrant, and Defendants are thus entitled to qualified immunity. "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Borgman*, 646 F.3d at 523 (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). Further, arguable probable cause exists when an officer mistakenly makes an arrest under the belief that he or she has probable cause if such mistake is objectively reasonable. *Id.* (citation omitted). "'As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest.'" *Fisher*, 619 F.3d at 816 (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).

As an initial matter, Plaintiff asserts in his Amended Complaint and throughout the pleadings that he was arrested for failing to move his tractor, and argues that Missouri has no

9

"Move Your Tractor" law. Plaintiff points out that, after he was arrested, Borders merely unwrapped the barbed wire fence from the front of the tractor to allow Russell and the Arnolds to pass and the tractor was never moved. Plaintiff's argument is unavailing. Plaintiff accurately notes that the Probable Cause Affidavit completed by Borders states that he was directed to move his tractor and that he was arrested for refusing to move his tractor. (Doc. 24-6.) Borders, however, also states in the Probable Cause Affidavit that Plaintiff had placed "barbed wire fence tied to the back of his tractor and he had barbed wire tied to fence poles so no one could get around." *Id.* at ¶ 3. Borders further stated that "the road was an access road and [Plaintiff] had to move his tractor so people could have access in and out of the hunting club." *Id.* at ¶ 5. Indeed, in his deposition, Borders testified that he told Hinshaw to move the tractor "*and barbed wire fence*." (Doc. 24-2 at ¶ 9, emphasis added.) Plaintiff disputes that he was specifically directed to move the barbed wire fence. Regardless of the semantics, it is clear that the purpose of Borders' directive was to allow the hunters to pass and that Plaintiff refused to allow them passage, either by moving his tractor or by removing the barbed wire. Plaintiff testified at his deposition that he would not allow the hunters to cross the Pathway and stated "I told them they was [sic] trespassing if they crossed." (Doc. 24-1 at 26.) When asked whether he was going to move "the tractor or the fence for anyone that day," Plaintiff responded "no…I was not going to move that fence for them to cross that property." *Id.* at 32. Plaintiff does not argue that he ever moved the barbed wire fence to allow the group to pass. Thus, Plaintiff's claim that he was arrested arbitrarily for failing to move his tractor in violation of a non-existent "Move Your Tractor" law is a mischaracterization of the evidence.

The facts of record show that Plaintiff was preventing Russell and the Arnolds from crossing a piece of ground that had historically been used to access the Tomera property.

10

Borders had been advised that the Pathway was used to access the hunting property. (Doc. 24-2 at 18-19.) Borders' probable cause Affidavit stated in pertinent part:

> Hinshaw had [Roy Russell] blocked in with his tractor on the access road at the Dorena Hunting Club. . .I advised Mr. Hinshaw that the road was an access road and he had to move his tractor so people could have access in and out of the hunting club.

(Doc. 24-6 at ¶¶ 1, 5.) When Borders and Watkins arrived at the scene, Plaintiff continued to refuse to allow the hunters to pass. When Borders asked Plaintiff to move his tractor to allow the hunters passage, Plaintiff did not comply. Thus, Borders had at least probable cause to believe Plaintiff was falsely imprisoning or disturbing the peace of Russell and the Arnolds.

A person commits the crime of false imprisonment in Missouri if he "knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty." RSMo § 565.130.

Plaintiff does not dispute that he refused to allow Russell and the Arnolds (referred to collectively as "the hunters") to cross the Pathway to leave the property after hunting. Plaintiff, however, contends that the hunters were not entrapped because "people on 4-wheelers can go through the woods and up the levee to county road 509." (Doc. 23 at 6.) Plaintiff notes that Arnold testified "I mean you can go through the woods and get to the levee, obviously, and I have." *Id.* at 4. Plaintiff states that the hunters called the Sheriff's office merely because they did not want to be "inconvenienced." *Id.* Defendants point out that Arnold further testified that he tried to find another way out "from the levee through the woods to another field but it was rough. You can't barely get a four wheeler through there." (Doc. 24-14 at 17.) The evidence reveals that the unwillingness of the hunters to travel another route to leave the hunting ground was not simply a matter of convenience. It was reasonable for the hunters, which included Arnold's fifteen-year-old daughter, to feel entrapped when they were prevented from leaving the

11

property via the same pathway they entered earlier that day, and the only other option was to attempt to travel through the woods with no path on rough terrain. Thus, the facts support a finding that Plaintiff restrained the hunters so as to interfere substantially with their liberty.

Moreover, Borders was told by the prosecuting attorney that Plaintiff could be charged with false imprisonment. Borders contacted the prosecuting attorney, Darren Cann, for advice on how to handle the situation prior to arresting Plaintiff. Cann advised Borders to arrest Plaintiff if he did not move his tractor to allow the group to pass. Cann told Borders that Plaintiff could be charged with false imprisonment and disturbing the peace. Following a prosecutor's advice "does not automatically cloak [officers] with qualified immunity, but rather, is used to show the reasonableness of the action taken." *E-Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 478 (8th Cir. 1989). In this case, Borders followed the prosecutor's advice by arresting Plaintiff for false imprisonment when Plaintiff repeatedly failed to comply with Borders' directive to move his tractor to allow the hunters to pass. This further supports the reasonableness of Borders' arrest of Plaintiff for false imprisonment.

Plaintiff argues that, assuming the hunters' liberty was restrained, the restraint was not unlawful. Plaintiff cites the *Missouri Approved Instructions-Criminal* for the crime of false imprisonment and notes that the first element requires that the defendant restrained the victim so as to interfere substantially with his liberty, but the second element provides as follows:

> Second, that [*Insert one of the following. Omit brackets and number.*]
>     [1] such restraint was by means of forcible compulsion and was without the consent of [*name of victim*]
>     [2] [*name of victim*] was incapacitated,
>     [3] [*name of victim*] was less than fourteen years old…

MAI-CR 3d 319.28. Plaintiff notes that "forcible compulsion" is defined as "either physical force that overcomes reasonable resistance or a threat, express or implied, that places a person in

reasonable fear of death, serious physical injury, or kidnapping." *Id.* Plaintiff contends that no reasonable person would have believed there was probable cause because there was no restraint by force or by manipulation of an incapacitated person.

To the extent Borders was required to have knowledge of the relevant jury instructions, the evidence could reasonably support a finding that Plaintiff's restraint of the hunters was unlawful as provided by Section 319.28. It is true there was no force used nor were there any direct threats of force. Section 319.28, however, requires only a "threat, express or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping." When the hunters returned from hunting they found the Pathway they had used to access the Tomera property blocked with Plaintiff's tractor and barbed wire, and the presence of Plaintiff and Carter. Plaintiff refused to allow them to cross the Pathway to exit the property. A reasonable person could construe Plaintiff's conduct as an implied threat. Further, as previously discussed, Borders was relying on the advice of the prosecuting attorney when arresting Plaintiff for false imprisonment. Any legal error made by Borders was not intentional. Given the totality of the circumstances, Borders' arrest of Plaintiff for false imprisonment was reasonable.

Plaintiff's arrest for disturbing the peace in violation of Section 574.010(2)(b) RSMo was also reasonable. A person commits the crime of peace disturbance if he "is in a public place or on private property of another without consent and purposely causes inconvenience to another person or persons by unreasonably and physically obstructing…the free ingress or egress to or from a public or private place." RSMo § 574.010(2)(B). Plaintiff argues that no reasonable person could find Plaintiff was committing this crime because he was not in a public place or on the private property of another person but, rather, he was on his own private property. Plaintiff

13

continues that it was instead the hunters (Russell and the Arnolds) who committed the crime of trespass.

Plaintiff ignores the fact that the Pathway had been used for over twenty years to access the Tomera property and that Borders had knowledge of this use. The Pathway was commonly believed to be an open easement or access road, and was used as such by the hunters and others without objection from Hinshaw until August 2012, when Hinshaw put up fences in an attempt to block access. As such, it was reasonable for Borders to believe that Plaintiff was blocking access to a public easement such that he was committing the crime of peace disturbance. As previously discussed, the fact that the prosecuting attorney advised Borders to arrest Plaintiff for disturbing the peace further supports the reasonableness of Borders' actions.

Further, as Defendants point out in their Supplemental Memorandum of Law, recent Eighth Circuit law elucidates that mistakes of law or fact, if objectively reasonable, may still justify a valid stop and not violate the Fourth Amendment. *See United States v. Gaffney*, 789 F.3d 866, 868 (8th Cir. 2015). Whether the Pathway is an easement, as well as the scope of such easement, is a legal issue to be determined by the proper court. To the Court's knowledge, this issue is still being disputed by adjacent land owners, as they claim they have obtained a prescriptive easement for the area in question. *See* Doc. 20-3. None of the parties in this cause have suggested that the issue has been resolved in state court. Regardless of how this property dispute is ultimately resolved, the fact remains that Borders' belief that a crime had been committed was objectively reasonable due to the fact that Plaintiff was blocking a path that had historically been used by Russell, Arnold, and other third parties to access the hunting ground. Even if it were subsequently determined that there is no easement and Russell and the Arnolds were trespassing on Plaintiff's property, Borders had at least arguable probable cause to arrest

Plaintiff for false imprisonment and disturbing the peace at the time. Thus, Borders is entitled to qualified immunity on Plaintiff's claim set forth in Count II that Borders violated Plaintiff's Fourth and Fourteenth Amendment rights by arresting him without probable cause.

In Count I, Plaintiff alleges that Defendants Moore, Borders, and Douglas entered into a conspiracy to arrest Plaintiff for the manner in which he parked his tractor on his own real property without probable cause in violation of his Fourth and Fifth Amendment rights. To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.*

The Court has already found that: (1) Plaintiff was not arrested for the manner in which he parked his tractor but, rather, was arrested for failing to allow Russell and the Arnolds to cross the Pathway to exit the hunting ground; and (2) Borders had at least arguable probable cause to arrest Plaintiff for false imprisonment and disturbing the peace and is therefore entitled to qualified immunity on Count II. Plaintiff's conspiracy claim against Borders necessarily fails as Borders' arrest of Plaintiff did not violate the Plaintiff's constitutional rights. Thus, Borders is entitled to qualified immunity on Count I.

Plaintiff's conspiracy claim also fails as to Defendants Moore and Douglas. With respect to Moore, the Probable Cause Affidavit states that Borders received a call from dispatch advising him to contact Sheriff Moore because "Allen Hinshaw had [Russell] blocked in with his tractor on the access road at the Dorena Hunting Club." (Doc. 24-6.) Borders called Moore and

15

requested that Moore call Russell because Plaintiff "would not let [Russell] out;" Moore responded that he would call Russell. *Id.* Moore spoke with Russell on the telephone and directed Russell to tell Plaintiff to move his tractor. When Plaintiff refused to move his tractor to allow the hunters to pass, Moore directed Borders to go to the scene and see if he could get Hinshaw to move his tractor. This was Moore's only involvement in the incident. Moore did not conspire with Borders to arrest Plaintiff in violation of his constitutional rights. Rather, Borders had at least arguable probable cause to arrest Plaintiff for false imprisonment and disturbing the peace. Thus, Moore is also entitled to qualified immunity on Plaintiff's conspiracy claim against him set forth in Count I.

Defendant Douglas was the jailer at the Mississippi County Jail when Plaintiff was brought to the jail for processing. Plaintiff does not indicate precisely how Douglas was involved in the alleged conspiracy to arrest Plaintiff and there is no evidence in the record that would support he was involved in Plaintiff's arrest in any way. Consequently, Douglas is also entitled to qualified immunity on Count I.

Accordingly, Defendants' Motion for Summary Judgment will be granted as to Counts I and II.

**B.    Strip Search of Plaintiff (Counts III)**

In Count III, Plaintiff alleges that, after his arrest, Defendant Douglas conducted a strip search and body cavity search of Plaintiff at the Mississippi County Jail in violation of Missouri law. Specifically, Section 544.193 RSMO limits when strip searches and body cavity searches can take place.

By statute, a district court "may decline to exercise supplemental jurisdiction over a claim" when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

1367(c)(3). Here, the Court has granted Defendants' Motion for Summary Judgment as to Plaintiff's federal claims under 42 U.S.C. § 1983. Deciding the state law claim against Defendant Douglas would require interpreting a Missouri statute and determining whether the procedures employed by the Mississippi County Jail conflict with the state statute. The Court finds that the parties will not be unduly inconvenienced by litigating this remaining claim in state court. Neither the Court nor the parties have expended any significant time and resources in this Court on the state claim against Defendant Douglas.

In sum, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim against Defendant Douglas and will dismiss this claim without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 18) is **granted** as to Counts I and II.

**IT IS FURTHER ORDERED** that Count III is **dismissed without prejudice**. A separate Judgment in favor of Defendants will accompany this Memorandum and Order.

                                          /s/ Abbie Crites-Leoni
                                          ABBIE CRITES-LEONI
                                          UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of November, 2015.